**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON**

**CIVIL ACTION NO. 13-75-DLB**

**BILLY RAY BOOTH**                                                              **PLAINTIFF**

vs.              **MEMORANDUM OPINION AND ORDER**

**CAROLYN W. COLVIN, Acting**                               **DEFENDANT**
**Commissioner of Social Security**

********************

Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of an administrative decision of the Commissioner of Social Security. The Court, having reviewed the record and for the reasons set forth herein, hereby reverses and remands the decision of the Commissioner.

## I. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff Billy Ray Booth filed his current applications for Supplemental Security Income (SSI) and Disability Insurance Benefits (DIB) payments, alleging disability as of February 19, 2009. (Tr. 7-25 and 151-59). Plaintiff's claim was denied initially and on reconsideration. (Tr. 87-90 and 94-96). At Plaintiff's request, Administrative Law Judge Gregory O. Varo conducted an administrative hearing on September 16, 2011. (Tr. 97 and 124-44). On November 3, 2011, ALJ Varo ruled that Plaintiff was not entitled to benefits. (Tr. 7-25). This decision became the final decision of the Commissioner when the Appeals Council denied review on January 15, 2013. (Tr. 1-4).

1

On March 14, 2013, Plaintiff filed the instant action. (Doc. # 1). The matter has culminated in cross motions for summary judgment, which are now ripe for review. (Docs. # 6 and 7).

## II. DISCUSSION

### A. Overview of the Process

Judicial review of the Commissioner's decision is restricted to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *See Cutlip v. Sec'y of Health & Human Servs.,* 25 F.3d 284, 286 (6th Cir. 1994). "Substantial evidence" is defined as "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* Courts are not to conduct a *de novo* review, resolve conflicts in the evidence, or make credibility determinations. *See id.* Rather, we are to affirm the Commissioner's decision, provided it is supported by substantial evidence, even if we might have decided the case differently. *See Her v. Comm'r of Soc. Sec.,* 203 F.3d 388, 389-90 (6th Cir. 1999).

The ALJ, in determining disability, conducts a five-step analysis. Step 1 considers whether the claimant is still performing substantial gainful activity; Step 2, whether any of the claimant's impairments are "severe"; Step 3, whether the impairments meet or equal a listing in the Listing of Impairments; Step 4, whether the claimant can still perform his past relevant work; and Step 5, whether significant numbers of other jobs exist in the national economy which the claimant can perform. As to the last step, the burden of proof shifts from the claimant to the Commissioner. *See Jones v. Comm'r of Social Sec.,* 336 F.3d

469, 474 (6th Cir. 2003); *Preslar v. Sec'y of Health & Human Servs.,* 14 F.3d 1107, 1110 (6th Cir. 1994).

**B.     The ALJ's Determination**

At Step 1, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. (Tr. 12). At Step 2, the ALJ found Plaintiff's degenerative disc disease of the lumbar spine, obesity, and a depressive disorder with anxiety to be severe impairments within the meaning of the regulations. (*Id.*).

At Step 3, the ALJ found that Plaintiff does not have an impairment or combination of impairments listed in, or medically equal to an impairment listed in 20 CFR Part 404, Subpart P, Appendix 1. (*Id.*). In doing so, the ALJ found that claimant's degenerative disc disease does not meet the requirements of Listing 1.02 (major dysfunction of a joint) or 1.04 (disorders of the spine) because "the record does not demonstrate ineffective ambulation or the need for a hand-held assistive device." (Tr. 15). Although obesity has been deleted from the listing of impairments, the ALJ gave "consideration to the fact that obesity can cause limitation of function" in evaluating Steps 3, 4 and 5. (Tr. 16). The ALJ also determined that claimant's depressive disorder with anxiety did not meet the requirements of 12.04 (affective disorders) or 12.06 (anxiety related disorders) because "claimant's mental impairments do not cause at least two 'marked' limitations, or one 'marked' limitation and 'repeated' episodes of decompensation." (Tr. 17).

At Step 4, the ALJ concluded that Plaintiff has the residual functional capacity (RFC) to perform limited light work activity, defined in 20 CFR 404.1567(b) as follows:

> Lift 10 pounds frequently and 20 pounds occasionally; Stand/Walk 6 hours in an 8 hour day, but not more than 1 hour at a time; Sit 6 hours in an 8 hour

day, but not more than 1 hour at a time; Needs to shift positions hourly; Occasionally climb ramps and stairs; Never climb ladders, ropes or scaffolds; Occasionally stoop and kneel; Never crouch or crawl; Avoid concentrated exposure to vibration; Avoid all exposure to unprotected heights; Limited to simple, repetitive tasks; Requires a non-public work setting with [n]o fast-paced production quotas.

(Tr. 17-18). Based upon this RFC, the ALJ concluded at Step 4 that Plaintiff was unable to perform any past relevant work. (Tr. 19).

Accordingly, the ALJ proceeded to the final step of the sequential evaluation. At Step 5, the ALJ found that there were a significant number of jobs in the national economy that Plaintiff could perform. (Tr. 20). The ALJ based this conclusion on testimony from a vocational expert (VE), in response to a hypothetical question assuming an individual of Plaintiff's age, education, work experience, and RFC. (*Id.*). The VE testified that a hypothetical individual with Plaintiff's vocational profile and RFC could work as a laborer/hand packer (3,200 jobs in Kentucky/184,000 nationally), machine operator (3,200 jobs in Kentucky/184,000 nationally), and in bench assembly (3,600 jobs in Kentucky/208,000 nationally). (*Id.*). Based on the testimony of the VE and Plaintiff's age, education, work experience, and RFC, the ALJ found that Plaintiff is capable of making a successful adjustment to other work and thus concluded that he was not under a "disability," as defined by the Social Security Act. (Tr. 21).

**C.     Analysis**

Plaintiff advances three arguments on appeal. (Doc. # 6). First, Plaintiff argues that the ALJ erred in deciding not to give controlling weight to the opinion of Plaintiff's treating physician and in failing to provide "good reasons" for his decision. Second, Plaintiff asserts that the ALJ erred in evaluating Plaintiff's credibility and complaints of pain. Third, Plaintiff

4

contends that the ALJ erred in relying on the VE's answers to improper hypothetical questions.

## 1. The ALJ erred in his application of the "treating physician" rule.

An ALJ must give a treating source's opinion controlling weight "if he finds the opinion 'well supported by medically acceptable clinical and laboratory diagnostic techniques' and 'not inconsistent with the other substantial evidence in the case record.'" *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004)(*quoting* 20 C.F.R. § 404.1527(d)(2)). If the ALJ decides that the treating source's opinion is not entitled to controlling weight, the ALJ must consider the following factors in order to determine how much weight to give the opinion: (1) the length of the treatment relationship and the frequency of the examination; (2) the nature and extent of the treatment relationship; (3) supportability of the opinion; (4) consistency of the opinion with the record as a whole; and (5) the specialization of the treating source. *Id.*

The regulations require the ALJ to give "good reasons" for the weight given to a treating source's opinion. 20 C.F.R. § 404.1527(d)(2). Accordingly, "a decision denying benefits 'must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" Soc. Sec. Rul. 96-2p, 1996 WL 374188 at *5 (1996); *see also Wilson*, 378 F.3d at 546 (vacating and remanding the case due to the ALJ's failure to follow these guidelines); *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, (6th Cir. 2007)(finding ALJ's conclusion that "[o]nce again, in assessing the evidence in light of Section 404.1527 of the Social Security Administration Regulations No.

4, the record does not support the limitations of the severity suggested by Dr. Stein" insufficient to satisfy the "good reasons" requirement). This "good reasons" requirement not only enables claimants to better understand the disposition of their case, it allows for meaningful review of the ALJ's decision-making process. *Wilson*, 378 F.3d at 544.

Case law suggests that ALJs should not give a treating source's opinion less than controlling weight simply because another medical source reaches a conflicting conclusion. *Hensley v. Astrue*, 573 F.3d 263, 266-67 (6th Cir. 2009)(vacating and remanding the case because the ALJ "made his own medical evaluation [by] reaching a conclusion that lay between the two conflicting absolute views of the physicians"). Social security disability cases commonly involve conflicting medical assessments. *Id.* If ALJs were allowed to disregard treating source opinions every time another source presented contrary conclusions," it would be a rare case indeed in which [controlling] weight would be accorded." *Id.*

An ALJ's non-compliance with 20 C.F.R. § 404.1527(c)(2) cannot be excused simply because his decision is otherwise supported by substantial evidence in the record. *Wilson*, 378 F.3d at 546. To hold otherwise, and "recognize substantial evidence as a defense to non-compliance with [20 C.F.R. § 404.1527(d)(2)], would afford the Commissioner the ability [to] violate the regulation with impunity and render the protections promised therein illusory." *Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir. 2009)(internal citations omitted). *But see Nelson v. Comm'r of Soc. Sec.*, 195 Fed. Appx. 462, (6th Cir. 2006)(holding that the ALJ's failure to specify the weight given to treating sources' opinions was harmless error because "the ALJ's evaluation of Nelson's mental impairments indirectly attacks both the supportability of Dr. Cook's and Dr. Peterson's opinions and the

6

consistency of those opinions with the rest of the record evidence").

Between November 16, 2010 and June 2, 2011, Dr. Gary Shearer treated Plaintiff for back pain and anxiety. (Tr. 355-88). On June 16, 2011, Dr. Shearer also prepared a Physical RFC Assessment for Plaintiff, in which he opined that Plaintiff was "[i]ncapable of even "low stress" jobs. (Tr. 390). Although the ALJ acknowledged Dr. Shearer's status as a treating physician, he proceeded to discount his opinion as follows:

> The treating physician assessment at Ex. 10F has been considered. The limitations in that assessment are found to be excessive and not consistent with the overall treatment records. The claimant's representative asserted that the 3/20/09 MRI at Ex. 2F, p. 38 was sufficient to support the extreme limitations by the treating physician. The undersigned disagrees, but finds that it does support the significant limitations in the residual functional capacity.

(Tr. 19). The ALJ ultimately concluded that "[t]he Kentucky Disability Determination Services' assessment for medium work and Dr. Shearer's opinion of no work at all represent two extremes, neither of which are found to be warranted." (*Id.*).

This analysis does not satisfy the procedural requirements outlined in 20 C.F.R. § 404.1527(d)(2). The ALJ fails to explain *why* the treating physician's opinion was not supported by the evidence and cites to no treatment records that would buttress this proposition. Furthermore, the ALJ fails to specify what weight he *did* give to Dr. Shearer's opinion, based on his use of the CFR factors. Simply stating that he "split the difference" between a treating source's opinion and a state agency consultant's assessment because they represented two extremes is not a satisfactory explanation, as the *Hensley* opinion makes clear.

Although the Commissioner does not directly argue that the ALJ's failure to give "good reasons" is harmless error, she cites to several portions of the record that support

7

the ALJ's findings. In essence, the Commissioner invites this Court to overlook gaps in the analysis because there is enough evidence in the record to support the ALJ's ultimate conclusion. However, the law clearly prohibits the Court from accepting this logic, because to do so would thwart the very purpose of these procedural requirements. Accordingly, the Court will remand the Commissioner's decision for further proceedings.

### 2. The Court does not reach Plaintiff's remaining arguments

Plaintiff's remaining arguments are as follows: (1) the ALJ erred in evaluating Plaintiff's credibility and complaints of pain; and (2) the ALJ erred in relying on the VE's answers to improper hypothetical questions. Ordinarily, the Court would be inclined to address such arguments to provide the ALJ further guidance on remand. However, each of these arguments depend, to one degree or another, on the ALJ's treatment of Dr. Shearer's opinion. Therefore, the Court cannot address these arguments until the ALJ has re-considered his treatment of that opinion on remand.

### III. CONCLUSION

For the reasons stated herein, the Court concludes that the ALJ failed to failed to follow SSA regulations and a remand is required. Accordingly, for the reasons stated,

**IT IS ORDERED** as follows:

1. Plaintiff's motion for summary judgment (Doc. # 6) be, and it hereby is, **GRANTED**;

2. Defendant's motion for summary judgment (Doc. # 7) be, and it hereby is, **DENIED;**

3. This action be, and it is, hereby **REMANDED** to the Commissioner under sentence four of 42 U.S.C. § 405(g) with instructions to adequately explain his treatment of Dr. Shearer's opinion, consistent with this Memorandum Opinion and Order; and

4. A Judgment will be entered contemporaneously herewith.

This 11th day of February, 2014.



Signed By:
*David L. Bunning*   DB
United States District Judge

G:\DATA\SocialSecurity\MOOs\Lexington\Booth MOO 13-75.wpd